**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
                           :

**STEVEN J. GENTILE,**          :
                           :

          **Plaintiff,**    :
                           :

   -against-       :    **REPORT AND RECOMMENDATION**
                           :    05 Civ. 7090 (SCR)(MDF)

**KEVIN A. NULTY, individually** :
**and as Chief of Police of the** :
**Orangetown Police Department,** :
**and TOWN OF ORANGETOWN,**   :
                           :

          **Defendants.**   :
                           :
------------------------------X

**TO: THE HONORABLE STEPHEN J. ROBINSON, U.S.D.J.**

Plaintiff, Steven J. Gentile, a former police officer for the defendant, Town of Orangetown (the "Town"), commenced this action against the Town and Kevin A. Nulty, the Town Chief of Police (collectively, the "Defendants"), pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First, Fifth, and Fourteenth Amendments; the Americans with Disabilities Act ("ADA"); and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Plaintiff also claims that, by discontinuing his disability benefits and terminating him from his employment as a police officer, the Defendants violated § 207-c of the New York General Municipal Law and § 71 of the New York Civil Service Law. He also asserts a claim under N.Y. Public Health Law § 18 based on the Defendants' alleged violation

1

of the confidentiality of his medical records.  Plaintiff seeks
declaratory and injunctive relief and compensatory and punitive
damages.

Each defendant has filed a motion to dismiss Plaintiff's
complaint under Rule 12(b)(1) and (6) of the Federal Rules of
Civil Procedure.  For the reasons outlined below, it is
recommended that your Honor grant the motions in part.

**BACKGROUND**

Unless otherwise noted, the following factual background is
taken from Plaintiff's amended complaint and assumed true for the
purposes of this motion to dismiss.

**I.      Plaintiff's Employment History with the Town Police
        Department and Previous Federal Court Litigation**

In 1989, Plaintiff was hired by the Town as a police
officer.  *See* Amended Compl. at ¶ 7.  In June of 1993, during a
routine traffic stop, Plaintiff was involved in a violent "gun
battle" with four individuals, who, unbeknownst to Plaintiff, had
just committed an armed robbery.  *See id*. at ¶¶ 7a-8.  As a
result of this incident, Plaintiff developed Post-Traumatic
Stress Disorder ("PTSD") and was absent from work until November
1993.  *See id*. at ¶ 9.  According to the amended complaint,
"[t]he [D]efendants recognized the [P]laintiff's [PTSD] [w]as
incurred in the performance of duty and recognized [P]laintiff's
entitlement to the benefits of § 207-c of the General Municipal

Law of the State of New York."[1]  *Id*. at ¶ 11.

On December 31, 1995, Plaintiff was involved in another incident during which he was assaulted by two suspects.  *See id*. at ¶ 13.  Plaintiff sustained human bites and injuries to his left knee, left shoulder, lower back, and right elbow.  *See id*. at ¶ 13.  According to Plaintiff, because of the human bites, he had to undergo repeated blood tests to test for various diseases and, in September 1996, he had corrective surgery on his knee. *See id*. at ¶ 15.  He states that, due to these injuries, the Defendants found that he was entitled to § 207-c benefits and Workers' Compensation.  *See id*. at ¶ 14.  Plaintiff further alleges that, as a result of the December 1995 incident, his PTSD worsened to the point where his treating psychiatrist, Dr. Peter Kroetsch, notified the Town that Plaintiff was unable to return to work.  *See id*. at ¶ 15.  According to the amended complaint, "Plaintiff's and [D]efendants' examining physicians all agreed

---

[1]  Section 207-c of the General Municipal Law provides, in relevant part:

> Any . . . member of a police force of any . . . town . . . who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment shall be paid by the municipality by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addition such municipality shall be liable for all medical treatment and hospital care necessitated by reason of such injury or illness.

N.Y. Gen. Mun. Law § 207-c(1).

that the [P]laintiff was disabled from the performance of his duties since the incident of December 31, 1995, and that such disability was entirely work-related"; however, the Town eventually stopped paying Plaintiff his § 207-c benefits and later stopped paying his salary. *Id.* at ¶¶ 16-16a. Plaintiff subsequently commenced an Article 78 proceeding in state court and obtained a court order, which held that he is entitled to be paid pursuant to § 207-c until it is determined that he is able to return to work. *See id.* at ¶ 16b and Ex. 1.

In September 1996, Plaintiff commenced his first action against the Defendants in this Court, "alleging that the [D]efendants had retaliated against him for exercising his rights under the First Amendment . . . including retaliation for the removal of [P]laintiff's . . . § 207-c benefits." *Id.* at ¶ 17. According to Plaintiff, one of the allegations raised in the 1996 action was that the Defendants retaliated against him for having notified the District Attorney's Office that a Town police supervisor had falsified official documents and that the Town police administration was covering it up in order to protect the individuals that assaulted Plaintiff during the December 1995 incident. *See id.* at ¶¶ 17a-17c. He also alleged that the Defendants denied him § 207-c benefits to punish him for having expressed his view within the police department that the Town improperly used an unauthorized radio frequency and gave other

special treatment to the individuals involved in the December 1995 assault. *See id.* In February 1999, the jury returned a verdict in favor of the Plaintiff against the individual defendants, including Nulty, and awarded him $15,000 in punitive damages against Nulty. *See id.* at ¶¶ 18-18a. Subsequently, the parties entered into a settlement agreement concerning damages. *See id.* at ¶ 19 and Ex. 2. Plaintiff claims that, even after the jury verdict, he did not receive any Workers' Compensation payments and the Town failed to pay his medical bills as required by § 207-c. *See id.* at ¶¶ 21-21b.

In November 1999, "after fourteen consecutive months of medical bills not being paid by the [D]efendants," Plaintiff initiated another lawsuit in this Court seeking payment of his § 207-c benefits. *See id.* at ¶ 32. After the complaint was served, the Plaintiff's medical bills were paid by the Town. *See id.* According to the amended complaint, the parties again entered into a settlement agreement regarding punitive damages. *See id.* at ¶ 34.

On September 14, 2004, the Town Supervisor wrote to Plaintiff stating, "In accordance with the Civil Service Law section 71, the Town Board will be reviewing a recommendation made to it by Police Chief Kevin Nulty concerning your separation from Town service." *Id.* at ¶ 38. The letter advised Plaintiff that a meeting was scheduled for September 27, 2004, at which he

could be heard on the matter and provide any information he may deem relevant. *See id.* Plaintiff subsequently wrote to the Town Supervisor seeking further information. *See id.* at ¶ 40. In his response, the Town Supervisor explained that, in August 2004, Nulty reported to the Town Board that Plaintiff had been absent from his position as a police officer since December 31, 1995 due to a disability resulting from an occupational injury or disease and, pursuant to section 71 of the Civil Service Law, an employee may be separated from the service of the Town when he or she has been absent for at least one year due to such a disability. *See id.* at ¶ 41. The Supervisor further explained that Nulty reported that Plaintiff's absence continued to encumber a position within the police department and that review of Plaintiff's medical records indicated that there was a minimal likelihood that he would return to work as a police officer. *See id.*

At the September 27, 2004 meeting, Plaintiff, who appeared without counsel, read a statement that he had prepared in advance, which "notif[ied] [the Town Board] that the [P]laintiff's questions were being ignored," and requested copies of the medical records reviewed by Nulty and a copy of Nulty's recommendation. *See id.* at ¶ 48. According to Plaintiff, he left the meeting expecting to be given the information he had requested and then an opportunity to respond, but was never

provided with the requested information. *See id*. at ¶ 57.
Plaintiff asserts that, "[o]n or about October 7, 2004, [he] was
shocked to hear from members of the public that a newspaper
article had reported that an Orangetown police officer on
disability had been terminated on September 27, 2004." *Id*. at
¶ 73. Plaintiff wrote to the Town Supervisor asking for a copy
of the Town Board's decision and was informed by the Town that he
had been terminated on September 27, 2004. *See id*. at ¶ 73a.

On October 11, 2004, Plaintiff wrote to the Town Supervisor
requesting information as to which benefits he would receive.
*See id*. at ¶ 76. The Town Supervisor responded that Plaintiff
would receive his salary pursuant to § 207-c; however, according
to the amended complaint, "[P]laintiff had been removed from the
benefit of timely receiving his regular salary pursuant to § 207-
c" and "did not timely receive his paycheck that was due to be
paid on October 15 and October 29, 2004 until over four months
later." *Id*. at ¶¶ 79a, 94-102 The Town Supervisor also informed
Plaintiff that the Town would no longer make contributions to
Plaintiff's retirement. *See id*. at ¶ 82.

According to the amended complaint, in late 2004, Plaintiff
learned that the Town, at a public Town Board meeting, announced
that Plaintiff had been seen by a psychiatrist and that, based on
the psychiatrist's findings, the Town believed that he "needed to
be retired and could no longer perform police work." *Id*. at ¶

7

91.  The amended complaint further alleges that the Town then published this information on the internet, in violation of the ADA, HIPAA, and § 18 of the New York Public Health Law.  *See id*. at ¶¶ 90-91a.

In May 2005, Plaintiff received a letter from defendant Nulty, informing him that, based on a review of reports of the Town's examining physicians and Plaintiff's employment in the private sector, a determination had been made that he was no longer disabled as a result of his work-related injuries and that, therefore, he would no longer be eligible for § 207-c benefits.  *See id*. at ¶¶ 116-17.  The letter further stated that the decision would not be implemented for one week in order to give Plaintiff an opportunity to provide the Town with medical evidence contesting the findings of the Town's physicians.  *See id*.  Enclosed with the letter were two medical reports from the Town's physicians.  *See id*. at ¶ 118.  According to Plaintiff, this was the first time that he had seen such reports, despite requesting that they be provided to him in September 2004, before he was terminated.  *See id*. at ¶ 118a.

By letter dated June 20, 2005, Plaintiff was informed by the Town that a meeting had been scheduled for June 29, 2005 concerning Plaintiff's eligibility for § 207-c benefits.  *See id*. at ¶ 125.  According to Plaintiff, the letter contained "no facts" [or] specification of charges" and he "remains unclear as

to the purpose of this meeting – what it was originally supposed
to be, or what it in fact was." *Id*. at ¶ 125a, 129.  Despite
Plaintiff's allegations regarding the Town's determination that
he was no longer eligible for § 207-c benefits, Plaintiff
concedes that, "[n]otwithstanding its purported termination of
[P]laintiff's employment under § 71, the Town continues to
compensate [P]laintiff his salary or wages under General
Municipal Law § 207-c." *Id*. at ¶ 123a.

## II.    <u>Amended Complaint</u>[2]

In his amended complaint, Plaintiff asserts six causes of
action.  In support of his claim that the Defendants violated his
right to substantive and procedural due process and equal
protection, Plaintiff alleges that the Defendants violated these
rights by: (1) discontinuing his § 207-c medical benefits and

---

[2]  Plaintiff, who proceeded *pro se* in this action until February
2006, did not amend his complaint until after the Defendants'
motions to dismiss were fully submitted.  For the most part, the
amended complaint reasserts allegations raised in the original
complaint.  However, it also sets forth additional allegations
regarding certain conduct of the Defendants and asserts a
"stigma-plus" procedural due process claim.  Because the
Defendants have not objected to the filing of the amended
complaint and have been given an opportunity to supplement their
motions, your Honor should deem the motions to dismiss as against
Plaintiff's amended complaint.  *See Tarka v. Greenfield Stein &
Senior, LLP*, No. 00 Civ. 1262, 2000 WL 1121557, at *1, n.2
(S.D.N.Y. Aug. 8, 2000)(treating defendants' motion to dismiss as
against first amended complaint where plaintiff did not file
amended complaint until after motion to dismiss was submitted but
where defendants were given opportunity to supplement their
motion).

salary payments without prior notice and a hearing and without supporting medical evidence, *see id.* at ¶¶ 31, 116-32; (2) terminating him from his position as a police officer without proper notice and an opportunity to be heard and without providing him with copies of the medical records that formed the basis of their opinion that there was a minimal likelihood that he would return to work as a police officer, *see id.* at ¶¶ 44a-47, 74a; (3) discontinuing the Town's contributions to Plaintiff's retirement, *see id.* at ¶¶ 82-88; and (4) making an application for involuntary disability retirement on behalf of Plaintiff without prior notice or an opportunity to be heard, *see id.* at 89d. Plaintiff further alleges that the Defendants violated his First Amendment rights to free speech and to petition the government for the redress of grievances by taking the above actions in retaliation for Plaintiff having previously filed federal lawsuits against the Defendants and having spoken out about certain misconduct within the police department. *See id.* at 17-20, 31, 42a, 133, 135.

Additionally, Plaintiff alleges that the Defendants' conduct violated his rights under N.Y. General Municipal Law § 207-c and N.Y. Civil Service Law § 71. *See id.* Plaintiff claims that, under § 207-c, "by virtue of his status as a police officer with permanent civil service status employed by defendant Town, [P]laintiff had a statutorily-guaranteed property interest . . .

in his continued employment by the Town and in being compensated at his full salary' . . . as an employee of the Town." *Id*. at ¶ 36a. He further claims that his termination pursuant to § 71 was improper because "§ 71 is not applicable to police officers entitled to receive benefits under . . . § 207-c." *Id*. at 43. He contends that the state legislature never intended for municipalities to terminate police officers pursuant to § 71 "because the rights and procedures under that section are contrary to the procedures and rights set forth under General Municipal Law § 207-c." *Id*. at 77. Plaintiff further claims that the Defendants' application of § 71 was improper because he was not on a "leave of absence" within the meaning of § 71. *See id*. at 59. He claims that the Defendants "never treated [him] as if he w[as] on a leave of absence" nor was he told that he was on a leave of absence. *Id*. at 59-60. Additionally, Plaintiff asserts that, by failing to sufficiently notify him that he was on a leave of absence and of his proposed termination and by failing to report his change in status to the Rockland County Commissioner of Personnel, the Defendants violated the due process requirements applicable to § 71, which are set forth in the regulations for the Department of Civil Service. *See id*. at ¶¶ 61-72, 111-115. Plaintiff also claims that his termination under § 71 was invalid because he is still being compensated under § 207-c. *See id*. at ¶ 123a-b. He states, "there is no

basis in New York law for compensating a public employee under § 207-c, yet at the same time considering such employee as having been terminated."  *Id*. at ¶ 123b.

Plaintiff also alleges that, by making certain medical records public, the Defendants violated the ADA, HIPAA, and § 18 of the New York Public Health Law.  *See id*. at 148.

Finally, with respect to the Town, Plaintiff alleges that the Defendants' actions were taken as part of a policy, practice, and custom of the Town to deprive Plaintiff of his federal rights within the meaning of *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978).

### III.       Defendants' Motions to Dismiss

In November 2005, both the Town and Nulty filed motions to dismiss Plaintiff's complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  The Defendants first argue that, to the extent Plaintiff's claims concern the possible discontinuance of his § 207-c benefits, the claims are not ripe because the Town has not made a final determination with respect his eligibility for such benefits.  *See* Memorandum of Law in Support of Defendant Nulty's Motion to Dismiss the Complaint ("Nulty Memo of Law") at 10.  In support of his motion, Nulty submitted a declaration in which he affirms, *inter alia*, that, at the June 29, 2005 Town Board meeting held to address Nulty's determination that Plaintiff was no longer disabled as a result of his work-related

injuries, the Town Board announced that it would appoint a hearing officer to conduct an evidentiary hearing concerning Plaintiff's entitlement to § 207-c benefits.  *See* Declaration in Support of Motion to Dismiss the Complaint ("Nulty Decl.") at ¶ 4 (attached to Notice of Motion).  According to Nulty, as of the date of his declaration, the evidentiary hearing had not yet taken place.  *See id*.  For the same reasons, the Defendants also assert that this Court should abstain from exercising jurisdiction over Plaintiff's claims for declaratory and injunctive relief concerning his eligibility for § 207-c benefits under the doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). *See* Nulty Memo of Law at 11.

The Defendants next argue that all of Plaintiff's constitutional claims should be dismissed for failure to state a claim.  *See id*. at 12-22; Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint ("Reply Memo of Law") at 6-17; Supplemental Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint ("Suppl. Memo of Law") at 4-7.  Additionally, they assert that Plaintiff has failed to state a claim under the ADA.  *See* Nulty Memo of Law at 12; Reply Memo of Law at 18-20; Suppl. Memo of Law at 7-8. Defendant Nulty also alleges that, with respect to Plaintiff's § 1983 claims, he is entitled to qualified immunity.  *See* Nulty Memo of Law at 22-25; Reply Memo of Law at 21.

# DISCUSSION

## I.    Rule 12(b)(1) and (6)

When considering a motion pursuant to Federal Rules of Civil
Procedure 12(b)(1) and (6), a court is required to accept the
material facts alleged in the complaint as true, and not to
dismiss "unless it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.
1994) (citation and quotation omitted) (Rule 12(b)(6)); *Shipping
Financial Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.
1998) (Rule 12(b)(1)).  "Although bald assertions and conclusions
of law are insufficient, the pleading standard is nonetheless a
liberal one." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.
1998).

"A case is properly dismissed for lack of subject matter
jurisdiction under Rule 12(b)(1) when the district court lacks
the statutory or constitutional power to adjudicate it."
*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "In
resolving the question of jurisdiction, the district court can
refer to evidence outside the pleadings and the plaintiff
asserting subject matter jurisdiction has the burden of proving
by a preponderance of the evidence that it exists." *Luckett v.
Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).  For dismissals under
Rule 12(b)(6), the task of a court "is merely to assess the legal

feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper*, 140 F.3d at 440.

## II.     Ripeness

The Defendants assert that Plaintiff's claims concerning his entitlement to § 207-c benefits and Defendants' administration of such benefits are not ripe and, therefore, this Court lacks subject-matter jurisdiction over such claims.  Under the ripeness doctrine, "[w]hen the events alleged in a plaintiff's cause of action have not yet occurred, a federal court is precluded from exercising subject matter jurisdiction because a real case or controversy does not exist for purposes of Article III." *Auerbach v. Bd. of Educ. of the Harborfields Cent. School Dist. of Greenlawn*, 136 F.3d 104, 108-09 (2d Cir. 1998).  "Because ripeness concerns whether a complaint presents a 'case or controversy' upon which a federal court can exercise its Article III powers, it is an appropriate matter to consider on a motion to dismiss for lack of subject matter jurisdiction." *Mastej v. Bolduc*, No. 05-CV-645, 2006 WL 1867712, at *1 (D. Conn. July 5, 2006).

According to Nulty, the Town Board has not made a final determination with respect to Plaintiff's entitlement to § 207-c benefits.  *See* Nulty Decl. at ¶ 4.  This Court may properly consider the facts set forth in Nulty's affidavit as they go to

15

the issue of subject matter jurisdiction.  *See Luckett*, 290 F.3d
at 496-97.  Plaintiff does not dispute Nulty's statement and,
moreover, in his amended complaint, Plaintiff admits that the
Town continues to pay him § 207-c benefits.  *See* Amended Compl.
at ¶ 123a.  He, however, alleges that, by denying him such
benefits, the Defendants violated § 207-c and his rights to
procedural and substantive due process and his First Amendment
rights to free speech and to petition the government.  Although
the precise nature of Plaintiff's challenge to the Town's actions
concerning his § 207-c benefits is unclear, to the extent
Plaintiff seeks to challenge on any constitutional or state law
ground the alleged denial of § 207-c benefits or possible denial
of benefits that may result after the pending evidentiary
hearing, his claims are not ripe for review.  *See Coffran v. Bd.
of Trustees of New York City Pension Fund*, 46 F.3d 3, 4 (2d Cir.
1995)(holding that plaintiff's claim that New York City Pension
Fund and other City officials violated his right to due process
by deciding that he was to be retired involuntarily without
holding a hearing was premature because the New York City Pension
Fund had yet to hold a final vote on plaintiff's case).

In his memorandum of law opposing the Defendants' motion,
Plaintiff suggests that the administrative process by which the
Town reviews his eligibility for § 207-c benefits, which he
characterizes as a "kangaroo" process "invented by the Town," is

not authorized.  Plaintiff's Memorandum of Law in Opposition to
Defendants' Motions to Dismiss the Complaint ("Plaintiff's
Opposition") at 23.  This argument, however, is unavailing and
does not render his § 207-c claims ripe for review.  In *DePoalo
v. Cty. of Schenectady*, 85 N.Y.2d 527, 532, 650 N.E.2d 395, 398,
626 N.Y.S.2d 737, 740 (1995), the New York Court of Appeals
expressly held that the plain wording of § 207-c authorizes a
municipality to make a determination as to whether the injury or
illness of an employee who may be eligible for benefits provided
under the statute was related to work performance.  The court
held that "[t]he only logical interpretation of the statute is
that the municipality, rather than the affected officer, is
authorized to make that determination."  *Id.*  As a general rule,
the procedures to be utilized when an employee contests a
determination made by the municipality concerning § 207-c
benefits is a mandatory subject of collective bargaining.  *See
City of Watertown v. State of N.Y. Pub. Employment Relations Bd.*,
95 N.Y.2d 73, 79, 733 N.E.2d 171, 174, 711 N.Y.S.2d 99, 102
(2000).  Although the current collective bargaining agreement
between the Town and the Orangetown Policemen's Benevolent
Association does not contain a provision setting forth § 207-c
dispute resolution procedures, *see* Reply Memo of Law at 4, n.2,
such procedures often entail an evidentiary hearing conducted
before an impartial hearing officer, who then makes a

recommendation to the employer, *see, e.g., Pirrone v. Town of Wallkill*, 6 A.D.3d 447, 774 N.Y.S.2d 361 (2d Dep't 2004); *Wynne v. Town of Ramapo*, 286 A.D.2d 338, 728 N.Y.S.2d 785 (2d Dep't 2001). This recognized procedure is, in fact, the procedure that the Town has undertaken to review Plaintiff's challenge to Nulty's determination that he is no longer disabled within the meaning of § 207-c. If, after the evidentiary hearing and recommendation by the hearing officer, Plaintiff seeks to challenge the outcome and procedure, he may do so through an Article 78 proceeding in state court.

Accordingly, it is recommended that your Honor dismiss Plaintiff's substantive and procedural due process claims, First Amendment retaliation claim, and any state law claim to the extent they are based on the Defendants' alleged denial of § 207-c benefits.

## III.     Plaintiff's § 1983 Claims

To state a claim under § 1983, a plaintiff must allege that the defendants, while acting under color of state law, deprived the plaintiff of a right guaranteed under the Constitution or laws of the United States. *See Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir. 2000). "To withstand a motion to dismiss, a § 1983 plaintiff must set forth specific factual allegations indicating a deprivation of constitutional rights." *McCoy v. Goord*, 255 F.Supp.2d 233, 245 (S.D.N.Y. 2003).

## A.    Procedural Due Process

In the employment context, to determine whether a plaintiff has been deprived of his due process rights, courts must engage in a two-step inquiry.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-41 (1985).  First, the court must determine whether the plaintiff has a protected property or liberty interest.  *See id.*  Second, the court must consider whether the state deprived the plaintiff of that protected interest without due process of law.  *See id.* at 541.

### 1.    Deprivation of Property

Plaintiff alleges that he has a statutorily guaranteed property interest in his continued employment as a police officer with the Town and that the Defendants deprived him of this right without due process of law.  *See* Amended Compl. at ¶ 36a.  "The court recognizes that [a] public employee has a property interest in continued employment if the employee is guaranteed continued employment absent just cause for discharge."  *Munno v. The Town of Orangetown*, 391 F.Supp.2d 263, 269 (S.D.N.Y. 2005).  Under New York law, a tenured municipal employee's interest in continued employment is a property interest protected by the Fourteenth Amendment.  *See* N.Y. Civil Service Law § 75; *Hardy v. Village of Piermont, N.Y.*, 923 F.Supp. 604, 607 (S.D.N.Y. 1996).  The Town does not dispute that Plaintiff has a protected property interest in his continued employment with the Town.  Nulty, however,

asserts that Plaintiff cannot establish that he had a protected property interest that was infringed by Nulty's recommendation to the Town that it terminate Plaintiff's employment under § 71 because his "mere recommendation caused no diminution or change in Plaintiff's employment status, salary or benefits."  Nulty Memo of Law at 12-13.  This argument is unavailing.  That Nulty's only role in the procedure used to terminate Plaintiff was his recommendation to the Board that Plaintiff be terminated from his position does not change that fact that, as a tenured police officer, Plaintiff had a protected property interest in his continued employment.  *See generally Loudermill*, 470 U.S. at 539-41 (explaining that the substantive rights protected by the due process clause are not conditioned on the procedures provided for their deprivation).

The state cannot deprive an individual of his protected property interest without due process.  The essential protection afforded by the due process clause is notice and opportunity to be heard that is in line with the nature of the case and the interests at stake.  *See id*. at 542.  "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his continued employment."  *Id*. (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972).  To determine what process is due in a particular case, a court must balance three

factors:

> First, the private interest that will be affected by
> the official action; second, the risk of an erroneous
> deprivation of such interest through the procedures
> used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the
> Government's interest, including the function involved
> and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would
> entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  With respect to
public employees, the Supreme Court, in considering the above
factors, has held that a pre-termination hearing "need not be
elaborate" and it "need not resolve the propriety of the
discharge." *Loudermill*, 470 U.S. at 545.  "The tenured public
employee is entitled to oral or written notice of the charges
against him, an explanation of the employer's evidence, and an
opportunity to present his side of the story."  *Id*. at 546.

Here, Plaintiff received the process he was due before being
terminated.  According to the amended complaint, prior to his
termination, Plaintiff received a letter informing him that a
recommendation had been made by defendant Nulty concerning his
possible separation from service pursuant to § 71 due to an
absence from work of over one year.  *See* Amended Compl. at 38.
The letter also set up a date for a meeting before the Town
Supervisor and the Town Board at which Plaintiff would have an
opportunity to be heard on the matter and provide any relevant
information.  *See id*.  In response, Plaintiff wrote to the Town

Supervisor for further information, attended the scheduled meeting, and read a prepared statement to the Town Board. *See id*. at ¶¶ 40, 48-55. In response to Plaintiff's letter, the Town Supervisor further explained the basis for Plaintiff's possible termination. *See id*. at ¶ 41.

Even if Plaintiff had not been afforded this level of a pre-termination hearing, his termination would not have violated the requirements of due process. Plaintiff was terminated pursuant to § 71 of the New York State Civil Service Law, which permits a civil service employer to terminate an employee who has been separated from service for more than one year by reason of disability resulting from an occupational injury, or, as in this case, an employee who was disabled as a result of an assault and has been absent for more than two years. *See* N.Y. Civil Service Law § 71; *Allen v. Howe*, 84 N.Y.2d 665, 645 N.E.2d 720, 621 N.Y.S.2d 287 (1994)(upholding Civil Service Department's interpretation of § 71 to mean that an employee who is absent due to an occupational disability for a cumulative period of one year is subject to termination if physically or mentally unable to return to work). It has been repeatedly held that a pre-termination hearing is not required before a civil service employee may have his employment terminated under § 71. *See Santiago v. Newburgh Enlarged City Sch. Dist.*, ___ F.Supp.2d ___, No. 05 Civ. 10731, 2006 WL 1676138, at *4 (S.D.N.Y. May 16,

2006); *Holmes v. Gaynor*, 313 F.Supp.2d 345, 358 (S.D.N.Y. 2004); *Johnson v. Doe*, No. 00 CIV 3920, 2001 WL 246370, at *3 (S.D.N.Y. March 12, 2001); *Leonard v. Regan*, 143 Misc.2d 574, 576-77, 540 N.Y.S.2d 958, 960 (N.Y.Sup. 1989). In *Santiago*, this Court explained that, because the Civil Service Law provides for post-termination procedures to challenge a § 71 termination, namely, the right to demand to return to work and to contest the employer's determination that he was not fit to return to work, the due process requirements are satisfied.[3] *See Santiago*, 2006 WL 1676138, at *4.

Furthermore, to the extent Plaintiff contends that the Defendants' failure to comply with the Civil Service regulations set forth in Title 4, Section 5.9 of the New York Code of Rules and Regulations deprived him of his right to procedural due

---

[3] Section 71 provides, in relevant part,

> Such employee may, within one year after the termination of such disability, make application to the civil service department or municipal commission having jurisdiction over the position last held by such employee for a medical examination to be conducted by a medical officer selected for that purpose by such department or commission. If, upon such medical examination, such medical officer shall certify that such person is physically and mentally fit to perform the duties of his or her former position, he or she shall be reinstated to his or her former position, if vacant, or to a vacancy in a similar position or a position in a lower grade in the same occupational field, or to a vacant position for which he or she was eligible for transfer.

N.Y. Civil Service Law § 71.

process, his claim is without merit.  Plaintiff's reliance on
this regulation is misplaced.  As the Defendants explain in their
reply memorandum of law, because Plaintiff's employment with the
Town was not a position "in the classified service of the State,"
the rules set forth in 4 N.Y.C.R.R. § 5.9 do not apply to his
termination.  Section 6 of the Civil Service Law provides that
the state Civil Service Commission must establish rules and
regulations for the enforcement and administration of the Civil
Service Law with respect to "offices and positions within the
classified service of the state."  N.Y. Civ. Serv. Law § 6(1).
Indeed, section 1.1 of the Civil Service rules and regulations
states, "Except as otherwise specified in any particular rule,
these rules shall apply to positions and employments in the
classified service *of the State* and public authorities, public
benefit corporations and other agencies for which the Civil
Service Law is administered by the State Department of Civil
Service."  4 N.Y.C.R.R. § 1.1 (emphasis added).  On the other
hand, under the Civil Service Law, jurisdiction over classified
civil service positions in a town, such as the Town of
Orangetown, lies with the municipality.  N.Y. Civ. Serv. Law
§ 17(2).  Moreover, section 20 provides that municipal civil
service commissions are responsible for prescribing, amending,
and enforcing suitable rules and regulations for carrying into
effect the provisions of the state Civil Service Law, "including

24

rules for the jurisdictional classification of the offices and employments in the classified service under its jurisdiction, for the position classification of such offices and employments, for examinations therefor and for appointments, promotions, transfers, resignations and reinstatements therein." N.Y. Civ. Serv. Law § 20(1). *See Goodman v. Dep't of Civil Serv. of Cty. of Suffolk*, 151 A.D.2d 481, 482, 542 N.Y.S.2d 273, 274 (2d Dep't 1989). Thus, the Defendants were not required to comply with the rules set forth in 4 N.Y.C.R.R. § 5.9 and their failure to do so does not constitute a violation of Plaintiff's due process rights.

Finally, Plaintiff's procedural due process claim must fail because state judicial review pursuant to Article 78 provides an adequate post-deprivation remedy for federal due process purposes. *See Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001); *Hellenic American Neighborhood Action Comm. v. The City of New York*, 101 F.3d 877, 881 (2d Cir. 1996). "When . . . a public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Locurto*, 264 F.3d at 171. In *Locurto*, the Second Circuit explained that an Article 78 proceeding in New York State court satisfies the post-termination hearing requirement as such proceedings permit petitioners to submit

evidence and try disputed issues, including constitutional claims. *See id.* at 174. In this case, had Plaintiff availed himself of this available remedy, he could have raised the claims he asserts here, including the applicability of state civil service rules and regulations, the impact of § 207-c on his right to continued employment, the adequacy of the Town's pre-termination procedures, and the sufficiency of the medical reports on which the Town based its decision. Although Plaintiff did not take advantage of the Article 78 procedures, the mere availability of this post-deprivation remedy satisfies the requirements of due process. *See Hellenic American Neighborhood Action Comm.*, 1014 F.3d at 881 (quoting *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984).

Plaintiff contends that an Article 78 proceeding is not an adequate post-deprivation remedy because the acts of which he now complains were committed by a policy-making official and not "random and unauthorized acts" of a state employee. This distinction, however, is of no consequence. It has been held that where a deprivation is effectuated through the random and unauthorized acts of government officials, procedural due process is not violated where the government provides a meaningful post-deprivation remedy. *See, e.g., id.* at 881-82. In *Locurto*, however, the Court explained that the question of whether a defendant's acts were random and unauthorized becomes moot

because the ultimate question that must be answered is what process is due to the plaintiff. *See Locurto*, 264 F.3d at 712-73. Even assuming for the purposes of the appeal before it that the defendants' acts were not random and unauthorized, the Court in *Locurto* found that the availability of an Article 78 proceeding satisfied the requirements of due process. Here, as discussed above, Plaintiff was afforded notice and a limited opportunity to be heard prior to his termination. This pre-deprivation "hearing," coupled with the availability of an Article 78 proceeding subsequent to termination, fully comports with the requirements of due process. Plaintiff's procedural due process claim based on the deprivation of a property right should, therefore, be dismissed.

## 2. **Deprivation of Liberty**

In his amended complaint, Plaintiff alleges that the Defendants deprived him of his "liberty interests in his public employment" by submitting an application for Plaintiff's involuntary disability retirement. *See* Amended Compl. at ¶¶ 89d, 92. He claims that, as a result of this act, he was "stigmatized as 'disabled.'" *Id*. at ¶ 89d.

"To establish a claim for violation of a liberty interest under the Fourteenth Amendment, [a] plaintiff must satisfy the 'stigma-plus' standard, which requires a showing that: (1) he was defamed; and (2) the defamation occurred in the course of the

27

termination of his employment, or was coupled with the deprivation of a legal right or status." *Munno v. Town of Orangetown*, 391 F.Supp.2d 263, 271 (S.D.N.Y. 2005). To satisfy the first prong, a plaintiff must show "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)(internal quotation marks and citations omitted).

Plaintiff's amended complaint fails to meet this requirement. First, although Plaintiff alleges that he was stigmatized as disabled, by maintaining that he is entitled to benefits under § 207-c, Plaintiff is asserting that he, in fact, suffers from a disability. Second, Plaintiff fails to make any specific allegations as to how the submission of an application for disability retirement has injured his reputation or harmed him in any way. In *Munno*, this Court explained that a plaintiff cannot simply rely on the impact a defamatory statement may have on job prospects, potential promotions, self-esteem, and other common consequences of a bad reputation. *See Munno*, 391 F.Supp.2d at 272. Finally, it was within the Defendants' rights under state law to submit the application for Plaintiff's disability retirement. Section 363 of the New York Retirement and Social Security Law and § 207-c of the General Municipal Law state that such an application may be made by the police officer

or by the head of the department in which the police officer is employed. *See* N.Y. Retire. & Soc. Sec. Law § 363(b); N.Y. Gen. Mun. Law § 207-c(3). Accordingly, Plaintiff has failed to state a procedural due process claim based on the deprivation of a liberty interest.

**B.    Substantive Due Process**

To survive a Rule 12(b)(6) dismissal motion, a plaintiff's substantive due process claim "must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005)(quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). While there is no precise way to determine wither conduct is "conscience-shocking," "malicious and sadistic abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose, unquestionably shock the conscience." *Id*. at 94 (internal quotation marks and citations omitted).

Here, Plaintiff's amended complaint does not allege any conduct by the Defendants that, even if proven, could be considered conscience-shocking so as to support a substantive due process claim. The Defendants' decision to terminate Plaintiff's employment pursuant to § 71 was reasonable in light of the fact that Plaintiff had been absent from his position for nearly 10 years. Plaintiff argues that, by terminating him "without legal

authority" and "without setting forth any legal basis or reasonable explanation for their action," the Defendants committed a substantive due process violation. *See* Plaintiff's Opposition at 9. He further argues that the Defendants have violated his substantive due process rights by "concocting a scheme to deprive [P]laintiff of his employment in blatant violation of the officer's property and liberty rights in his public employment despite the guarantees of . . . § 207-c." *Id.* at 10. These allegations, however, are subsumed by Plaintiff's more particularized procedural due process claims and, therefore, cannot support a substantive due process claim. "[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Velez*, 401 F.3d at 94. For the same reason, Plaintiff's allegation that the Defendants terminated his employment and denied him various benefits in retaliation for having filed previous lawsuits against them cannot be considered in the context of a substantive due process claim as it is covered by Plaintiff's more particularized First Amendment retaliation claim. Accordingly, Plaintiff's substantive due process claim against the Defendants should be dismissed.

C.  **Equal Protection**

The Defendants argue that Plaintiff's amended complaint wholly fails to allege any facts to support an equal protection claim and, therefore, the claim should be dismissed. *See* Suppl. Memo of Law at 7. While the amended complaint is far from clear in its assertion of an equal protection claim, a review of the amended complaint reveals that Plaintiff has satisfied the minimal pleading requirements that a plaintiff must meet in order to state an equal protection claim under both the selective enforcement and "class of one" theories.

In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)(*per curiam*), the Supreme Court explained that equal protection claims may be brought by a "class of one" "where the plaintiff alleges that [he or] she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Subsequently, the Second Circuit, in *DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003), set forth the pleading requirements for a "class of one" equal protection claim. Based on the Supreme Court's decision in *Olech*, the Court held that, at the pleading stage, a plaintiff must generally allege that: (1) he was intentionally treated differently than other similarly situated individuals; and (2) there is no rational basis for the difference in treatment. *See id*. at 707. With respect to the second requirement, the Court

noted that the "allegation of an impermissible motive and of animus is sufficient to establish an equal protection issue." *Id.* Similarly, in order to state an equal protection claim under a selective enforcement theory, a plaintiff must allege that, compared with others similarly situated, he was selectively treated and that such treatment was based on impermissible considerations, including, race, religion, intent to punish or inhibit the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *See Crowley v. Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996).

In paragraphs 114 and 115 of the amended complaint, Plaintiff alleges:

> 114.    Upon information and belief, other than plaintiff herein, the defendant Town has never stopped paying into the Retirement System for any other public employee to whom they [sic] were paying salary or wages.

> 115.    Upon information and belief, the defendant Town has never previously attempted to terminate an employee pursuant to Civil Service Law § 71, while the employee was receiving salary or wages pursuant to General Municipal Law § 207-c.

Amended Compl. at ¶¶ 114-15.  These allegations, coupled with Plaintiff's assertion that the Defendants intentionally engaged in the conduct of which he now complains in order to punish him for having filed previous federal lawsuits, are sufficient to establish an equal protection claim.

Plaintiff's equal protection claim based on the Defendants' failure to contribute to his retirement, however, must be dismissed as against defendant Nulty.  In order to state a valid claim against an individual defendant under § 1983, a plaintiff must allege that the defendant had some personal involvement in the alleged constitutional deprivation.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)("[P]ersonal involvement of defendants in alleged constitutional violations is a prerequisite to an award of damages under § 1983.").  Nowhere in the complaint does Plaintiff allege that Nulty had any personal involvement in the Town's alleged failure to contribute to Plaintiff's retirement.  Moreover, Plaintiff offers no allegations from which this Court may infer that Nulty played any role in the Town's decision to stop making payments to Plaintiff's retirement.

D.   **First Amendment Retaliation**

Plaintiff alleges that the Defendants violated his First Amendment rights to free speech and to petition the Government for redress of grievances by terminating him from his employment with the police department and denying him certain benefits in retaliation for having brought a previous lawsuit against them and for having spoken out about various wrongdoings in the police department.  "A public employee claiming First Amendment retaliation must demonstrate that: (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment

action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination." *See Feingold v. New York*, 366 F.3d 138, 160 (2d Cir. 2004). Plaintiff's claim that his right to petition the government was violated by the Defendants' retaliatory conduct, while distinct from his free speech claim, is subject to the same analysis. *See Wayte v. United States*, 470 U.S. 598, 610 n.11 (1985). Plaintiff must, therefore, also establish that he petitioned the government as a citizen on a matter of public concern. *See Russo v. City of Hartford*, 158 F.Supp.2d 214, 240 (D.Conn. 2001).

### 1. <u>Adverse Employment Action</u>

To establish an adverse employment action, a plaintiff must show that he has suffered a material change in the terms and conditions of his employment. *See Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000). To the extent Plaintiff bases his First Amendment claim on the alleged denial of § 207-c benefits, the claim must fail because there has been no final decision regarding his entitlement to such benefits. Moreover, Plaintiff concedes in his complaint that he continues to receive such benefits from the Town. Thus, there has been no adverse employment action with respect to these benefits. Plaintiff, however, alleges that his termination was retaliatory. Termination from employment clearly constitutes an adverse

employment action.  Plaintiff's amended complaint, therefore,
satisfies this prong of the showing required to state a First
Amendment retaliation claim.

### 2.  Speech on a Matter of Public Concern

For speech to be protected under the First Amendment, it
must first relate to "any matter of political, social or other
concern to the community." *Connick v. Myers*, 461 U.S. 138, 146
(1983).  The question of whether an employee's speech addresses a
matter of public concern is a matter of law that "must be
determined by the content, form, and context of a given
statement, as revealed by the whole record." *Id.* at 148.  *See
Locurto v. Giuliani*, 447 F.3d 159, 173 (2d Cir. 2006).  In making
this determination, a court should consider "the motive of the
speaker and attempt to determine whether the speech was
calculated to redress personal grievances or whether it had a
broader public purpose." *Lewis v. Cowen*, 165 F.3d 154, 163-64
(2d Cir. 1999).

Here, with respect to Plaintiff's 1996 and 1999 lawsuits
against the defendants, Plaintiff has failed to establish that,
in bringing these case before the court, he was petitioning the
government on a matter of public concern.  According to the
amended complaint, in his 1996 lawsuit, Plaintiff was seeking
relief for the Defendants' alleged failure to pay him § 207-c
benefits through a First Amendment retaliation claim.  *See*

35

Amended Compl. at ¶¶ 17, 17a-c.  While Plaintiff's claim in that
lawsuit was based on action allegedly taken by the Defendants in
retaliation for Plaintiff's criticism of certain conduct within
the police department, which may have constituted speech on a
matter of public concern for the purposes of that retaliation
claim, Plaintiff's motive in bringing the lawsuit was solely to
seek redress for a personal grievance, not to correct allegedly
unlawful practices within the police department or to bring them
to public attention.  *See Saulpaugh v. Monroe Community Hosp.*, 4
F.3d 134, 143 (2d Cir. 1993).  Similarly, there is nothing in the
amended complaint that demonstrates that Plaintiff's 1999 lawsuit
was a petition to the government on a matter of public concern.
According to Plaintiff, he commenced the 1999 lawsuit in order to
collect his § 207-c medical benefits.  A review of the complaint
filed in that lawsuit, which Defendants have submitted in support
of their motion, reveals no attempt on the part of the Plaintiff,
as a private citizen, to bring to light any political, social, or
other concerns of the public.  His allegations related solely to
his own employment situation.  Such complaints cannot possibly be
considered to be on matters of public concern.  Accordingly,
Plaintiff's previous lawsuits against the Defendants do not
constitute protected speech and cannot support a First Amendment
retaliation claim.

Plaintiff also claims that the Defendants' conduct violated

his First Amendment right to free speech. While the amended complaint does not expressly state what protected statements of the Plaintiff motivated the Defendants' decision to take adverse action against him, it can fairly be read to allege that the Defendants took such action in retaliation for the comments Plaintiff had made regarding misconduct in the police department and which served as the basis for his retaliation claim in his 1996 lawsuit against the Defendants. In ¶ 17c of the amended complaint, Plaintiff asserts:

> 17c. As stated in plaintiff's 1996 complaint, and realleged here:
>
>> Plaintiff, in a non-disruptive manner, expressed his opinion within the police department that the special treatment accorded the Ryoos in the face of felony assault by them upon a sworn member of the department was improper. He further expressed the view, previously articulated by the Orangetown PBA, that the Town's use of an unauthorized radio frequency put not only himself but all other town police officers (as well as civilians they might be trying to assist) at unnecessary risk since that radio frequency produced 'dead spots' within the town and from which audible radio transmissions could not effectively be made. Defendants were aware of plaintiff's expression of these opinions.

Amended Compl. at ¶ 17c. While these statements made by Plaintiff within the police department may touch on matters of public concern, it is not necessary for your Honor to decide the issue. Even if the Court were to decide that these comments touched on a matter of public concern, Plaintiff's claim would

still fail due to his inability to establish the third prong of a
First Amendment retaliation claim.

### 3. __Causal Connection__

Assuming for the purposes of deciding this motion that the
comments that Plaintiff made regarding misconduct in the police
department constitute speech on a matter of public concern, the
Court must determine whether Plaintiff has established a causal
connection between the speech and the adverse employment action.
The Second Circuit has held that a plaintiff can indirectly
establish a causal connection to support a retaliation claim by
demonstrating that the protected speech was followed closely in
time by the adverse employment action. *See Gorman-Bakos v.
Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554
(2d Cir. 2001). The Court, however, "has not drawn a bright line
to define the outer limits beyond which a temporal relationship
is too attenuated to establish a causal relationship between the
exercise of a federal constitutional right and an allegedly
retaliatory action." *Id*.

According to the amended complaint, the comments Plaintiff
made about police department misconduct had to have been made
prior to the filing of his 1996 lawsuit, as the same comments
served as the basis of his retaliation claim in that lawsuit.
The adverse employment action of which he now complains is his
termination from employment under § 71, which occurred in

September 2004.  This approximately eight-year lapse in time clearly cannot justify an inference that Plaintiff's speech was a motivating factor in the Defendants' decision to terminate his employment.  *See Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir. 1999)(holding that a two-year lapse in time between Plaintiff's protected speech and discharge was too long to support an inference of a retaliatory motive); *Richardson v. New York State Dept. of Corr. Serv.*, 180 F.3d 426, 447 (2d Cir. 1999)(same).  Moreover, other than Plaintiff's conclusory allegation that Defendants were "motivated in whole or in part by a calculated attempt to punish him for having exercised his right to free speech," there is nothing else alleged in the complaint to suggest that the Defendants were motivated by these comments.

Accordingly, Plaintiff has failed to establish a claim of First Amendment retaliation against each of the Defendants and his claim should be dismissed.

### E.  <u>Qualified Immunity</u>

Defendant Nulty asserts that he is entitled to qualified immunity on all of Plaintiff's § 1983 claims.  The doctrine of qualified immunity is designed to shield state officials from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Thus, "[a] defendant is entitled to qualified immunity only if he

can show that, viewing the evidence in the light most favorable
to plaintiff[], no reasonable jury could conclude that the
defendant acted unreasonably in light of the clearly established
law." *Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir. 2006).
The Second Circuit has held that the defense of qualified
immunity may be properly raised in a Rule 12(b)(6) motion "as
long as the defense is based on facts appearing on the face of
the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir.
2004).

In determining whether a defendant is entitled to qualified
immunity, a court must first assess whether the facts alleged
show that the defendant's conduct violated a constitutional
right. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). If the
answer to that question is yes, the court must then go on to
assess whether the right was clearly established. *See Pena v.
DePrisco*, 432 F.3d 98, 107 (2d Cir. 2005). "If the complaint
does not allege a cognizable federal claim, the defendant is
entitled to have his qualified-immunity motion granted promptly
as a matter of law." *Munafo v. Metropolitan Transportation
Auth.*, 285 F.3d 201, 211 (2d Cir. 2002).

As explained above, Plaintiff has failed to establish viable
procedural and substantive due process and First Amendment
retaliation claims. Nulty, therefore, is entitled to qualified
immunity as to these claims. Because Plaintiff has stated a

cognizable equal protection claim against Nulty, however, this Court must consider whether the facts as alleged in the amended complaint show that Nulty acted reasonably in light of clearly established law.

The "class of one" equal protection claim that Plaintiff has asserted against Nulty is based on his termination under § 71. It was clearly established at the time of Nulty's alleged actions with respect to Plaintiff's termination that equal protection claims could be brought by a class of one. As the Supreme Court stated in *Olech*, the Court has long "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. at 564. Despite this clearly established law, based on the facts set forth in the complaint and New York state law, it cannot be said that Nulty acted unreasonably in recommending to the Town that Plaintiff's employment be terminated under § 71.

In his amended complaint and opposition papers, Plaintiff repeatedly asserts that a police officer entitled to receive benefits under § 207-c cannot be terminated pursuant to § 71. However, it has been held that an appointing body has the authority to remove a disabled police officer from service under § 71, even if that police officer is receiving § 207-c benefits.

41

*See Stewart v. Cty. of Albany*, 300 A.D.2d 984, 985, 750 N.Y.S.2d 912, 913 (3d Dep't 2002)("Upon our review of Civil Service Law § 71 and its legislative history, we find it clearly within the Sheriff's authority to avail himself of the termination procedures therein outlined to remove a disabled correction officer-even one receiving General Municipal Law § 207-c benefits-from the County payroll.").  Thus, given Plaintiff's absence from work for nearly ten years, defendant Nulty acted well within his authority when he recommended to the Town Board that Plaintiff's employment be terminated.

Moreover, Plaintiff concedes in his amended complaint that he was continuously absent from work since the December 1995 incident up until the time that Nulty recommended § 71 termination to the Town Board.  Under § 71, a police officer can be terminated from service after a two-year leave of absence for a disability that was the result of an assault that occurred in the course of his employment.  *See* N.Y. Civ. Serv. Law § 71. Here, Plaintiff remained on the Town's payroll for nearly 10 years before Nulty decided to make his recommendation to the Town Board.  Given that § 71 allows for termination after only two years of absence, it was objectively reasonable for Nulty to believe that recommending termination to the Town Board after Plaintiff's extensive absence was a lawful course of action. Nulty has, therefore, established that he is entitled to

qualified immunity on Plaintiff's remaining equal protection claim.

Accordingly, it is recommended that your Honor hold as a matter of law that Nulty is entitled to qualified immunity on all of Plaintiff's § 1983 claims and dismiss the equal protection claim based on Plaintiff's § 71 termination as against defendant Nulty.

**IV.** **ADA**

In the amended complaint, Plaintiff alleges that the Defendants disclosed to the public his confidential medical records and information in violation of the ADA and the HIPAA. Specifically, Plaintiff alleges that:

> In late 2004, plaintiff became aware that the defendant Town had held a Town Board meeting in front of the public where they disseminated to the public that the plaintiff had been seen by, and a report written up from, a Dr. Lawrence Loeb, M.D., a psychiatrist known in the geographical area. The release of the confidential information went even further. The defendants stated that because of Dr. Loeb's evaluation and report, the plaintiff, in the defendant Town's opinion, needed to be retired and could no longer perform police work.
>
> Further, upon information and belief said defendant Town then published the same personal, medical, and private information on the Internet, all contrary to the confidentiality requirements of federal and New York State laws, including the Americans with Disabilities Act and Public Health Law § 18. To date, this information is believed still posted on the Internet. These actions by the defendant Town caused plaintiff further embarrassment, public shame, humiliation, and held him up to public ridicule.

Amended Compl. at ¶¶ 91-91a.  In his opposition papers, Plaintiff indicates that he wishes to withdraw his ADA claim against defendant Nulty.  *See* Plaintiff's Opposition at 27-28.  He also further clarifies the nature of his ADA claim, stating that, "[b]ecause the complaint alleges adverse job action based upon Plaintiff's ADA-qualified disability, and Plaintiff's 'record of disability,' such claim is viable."  *Id.* at 31.

While Plaintiff's amended complaint seems to indicate that his ADA claim is based on the disclosure of certain confidential medical information, he states in his opposition papers that he is asserting a disability discrimination claim under the ADA. *See* Plaintiff's Opposition at 31.  "To establish a prima facie case of disability discrimination, a plaintiff must show: '(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered [an] adverse employment action because of his disability.'"  *Cameron v. Community Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003)(quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)).

Other than alleging that Plaintiff suffers from a disability, the amended complaint does not plead the essential elements of a disability discrimination claim.  Notably absent from the amended complaint is an allegation that Plaintiff was

otherwise qualified to perform the essential functions of his job as a police officer.  Plaintiff maintains that he is entitled to § 207-c benefits because he continues to suffer from post-traumatic stress disorder which prevents him from returning to his job as a police officer; therefore, he is necessarily unable to establish that he is otherwise qualified to perform his job. This Court and other courts in this circuit have held that "an employee incapable of regular attendance is . . . not qualified to perform the essential functions of a given position." *King v. Town of Wallkill*, 302 F.Supp.2d 279, 289 (S.D.N.Y. 2004).  *See also Mazza v. Bratton*, 108 F.Supp.2d 167, 175 (E.D.N.Y. 2000); *Bobrowsky v. New York City Bd. of Educ.*, No. No. 97-cv-874, 1999 WL 737919, at *4 (E.D.N.Y. Sept. 16, 1999).  Plaintiff, therefore, is unable to state a claim under the ADA for disability discrimination.  It is recommended that your Honor grant the Town's motion to dismiss with respect to Plaintiff's ADA claim.

In addition to his ADA claim, Plaintiff has asserted a claim under HIPAA.  While the existence of a private right of action under HIPAA is highly questionable, *see Cassidy v. Nicolo*, No. 03-CV-6603, 2005 WL 3334523, at *5 (W.D.N.Y. Dec. 7, 2005)(noting that district courts have consistently held that HIPAA does not authorize a private right of action and collecting cases), the Defendants have failed to make any arguments with respect to this

claim in their motions to dismiss.[4]  The claim, therefore, remains.

## V.        __State Law Claims__

Finally, Plaintiff asserts various claims seeking relief under New York state statutes, namely, § 71 of the New York Civil Service Law, § 207-c of the General Municipal Law, and § 18 of the Public Health Law.  With respect to Plaintiff's claim under § 207-c, as explained above, Plaintiff's claims regarding his entitlement to § 207-c benefits are not ripe.  *See supra*, section II.  This state law claim should, therefore, be dismissed.  With respect to Plaintiff's remaining state law claims under § 71 and N.Y. Public Health Law § 18, neither Defendant has sought dismissal of these claims.  Because this Court has original jurisdiction over Plaintiff's equal protection claim against the Town and his HIPAA claim against both Defendants, supplemental jurisdiction over Plaintiff's remaining state law claims is appropriate.  *See* 28 U.S.C. § 1367(a).

---

[4]  This Court cannot *sua sponte* dismiss Plaintiff's HIPAA claims on the ground that the statute does not provide for a private right of action because this matter is not jurisdictional.  *See Northwest Airlines, Inc. v. Cty. of Kent, Mich.*, 510 U.S. 355, 365 (1994)("The question whether a federal statute creates a claim for relief is not jurisdictional."); *TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 74 (2d Cir. 2002)(holding that, because defendants did not argue that the statute in question did not create a private right of action, the Court need not reach the issue).

## **CONCLUSION**

Based on the foregoing reasons, it is respectfully recommended that your Honor grant defendant Nulty's motion to dismiss in its entirety and grant the Town's motion to dismiss as to the following claims: (1) substantive and procedural due process under the Fourteenth Amendment; (2) First Amendment retaliation; and (3) disability discrimination under the ADA.  It is further recommended that your Honor grant defendant Nulty's motion with respect to Plaintiff's equal protection claim, but deny the Town's motion as to this claim.  The Defendants have failed to seek dismissal of Plaintiff's HIPAA and state law claims and, therefore, these claims, with the exception of Plaintiff's claim under § 207-c of the General Municipal Law, should remain.  Plaintiff's § 207-c state law claim is not ripe and, therefore, it is respectfully recommended that your Honor *sua sponte* dismiss this claim.

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra

copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street, Room 633, White Plains New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Robinson. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), cert. denied 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15,16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Date: August 18, 2006
White Plains, New York

Respectfully submitted,

MARK D. FOX
UNITED STATES MAGISTRATE JUDGE


Copies of the foregoing report and recommendation have been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

Michael D. Diederich, Jr., Esq.
361 Route 210
Stony Point, New York 10980

Edward J. Phillips, Esq.
445 Hamilton Avenue, 15th Floor
White Plains, New York 10601

Teresa M. Kenny, Esq.
Teresa M. Kenny, P.C.
334 South Middletown Road
Nanuet, New York 10954